**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHELE BURKE, | |
| Plaintiff, | Civil Action No. 25-1422 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| INTERSTATE RESTORATION LLC, *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Interstate Restoration LLC d/b/a First Onsite Property Restoration ("First Onsite"), Amy Brown ("Brown"), Susan Murrell ("Murrell"), Zac Talbot ("Talbot"), and Scott Futrovsky's ("Futrovsky") (collectively, "Defendants") Motion to Dismiss (ECF No. 12) Plaintiff Michele Burke's ("Plaintiff") Amended Complaint (ECF No. 11) as to the claims asserted against Murrell, Talbot, and Futrovsky. Plaintiff opposed (ECF No. 14) and Defendants replied (ECF No. 18). After careful consideration of the parties' submissions, the Court decides Defendants' motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' Motion to Dismiss is granted in part and denied in part.

I.     **BACKGROUND**

A.     **Factual Background**[1]

In or around July 2022, Plaintiff began her employment with First Onsite as a Human Resources ("HR") Business Partner and remained in the role until her "for cause" termination on March 28, 2025. (Am. Compl. ¶¶ 1, 20, 78-79, ECF No. 11.) First Onsite is a full-service disaster recovery and property restoration company with offices throughout North America. (*Id.* ¶¶ 21-22.) First Onsite also employs fully remote workers such as Plaintiff. (*Id.*)

Plaintiff received "consistently glowing performance reviews" during the course of her employment. (*Id.* ¶ 23.) In or around late August 2024, Plaintiff disclosed to Brown, a "Human Resources Business Partner ('HRBP') Manager" and Plaintiff's "direct supervisor[,]" that Plaintiff was suffering from mental health issues including anxiety and depression. (*Id.* ¶¶ 3, 16, 25.) Brown met Plaintiff's disclosure "with hostility" and spoke to Plaintiff in an "increasingly aggressive way." (*Id.* ¶¶ 26-27.)

On October 9, 2024, Plaintiff was assigned to the Hurricane Milton Special Emergency Response Team (the "SERT") where she was tasked with ensuring that resources were effectively deployed to areas affected by the hurricane. (*Id.* ¶ 30.) Then, on or around October 11, 2024, Plaintiff and the SERT were instructed to pause all deployments "until further instructions were provided." (*Id.* ¶¶ 30-31.) Members of the SERT were instructed to watch a specific SERT chat forum and e-mail inbox over the next few days where updates on whether further deployments were necessary would be provided. (*Id.* ¶ 31.) The next day, Plaintiff continuously monitored the SERT chat forum and inbox for messages but received no further instructions until the following

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

day, when she was instructed to continue "deploying responders" in response to the hurricane. (*Id.* ¶¶ 31-34.)

On October 14, Plaintiff suffered a "debilitating migraine" and informed Brown, who told Plaintiff not to "worry about it" and that the "team would be fine[.]" (*Id.* ¶ 35.) The next day, Brown removed Plaintiff from the SERT team without a justification or explanation. (*Id.* ¶ 36.) Then on October 25, 2024, Brown placed Plaintiff on a Performance Improvement Plan (the "PIP"). (*Id.* ¶ 37.) The PIP, among other things, instructed Plaintiff to seek feedback from twelve of her peers about her "attitude" and claimed that Plaintiff failed to join a scheduled call on October 12, 2024. (*Id.* ¶¶ 41-42.) When Plaintiff explained that she did not know there was a call scheduled on October 12, 2024, because there were no messages in the SERT chat, Brown stated that discussion leading up to the call occurred "offline." (*Id.* ¶ 43.)

Plaintiff told Brown that the tasks included within the PIP were tasks she "already completes[,]" to which Brown responded: it is "not that you're not doing it"; that Plaintiff's "succession plans look good"; and that Plaintiff is "an excellent HR business partner." (*Id.* ¶ 46.) Brown additionally told Plaintiff that she has a "negative tone." (*Id.* ¶ 49.) When Plaintiff asked Brown what she meant by "negative tone" Brown brought up an incident where Plaintiff asked that the color of a presentation be changed to avoid hurting her eyes. (*Id.* ¶¶ 49-50.)

Plaintiff thereafter sent a lengthy e-mail message to Murrell, First Onsite's Vice President of HR, informing her that the PIP contained many "untruths and lies" and that the PIP was implemented in retaliation for Plaintiff's disclosure that she was suffering from "severe depression, extreme anxiety and memory issues." (*Id.* ¶ 52.) While Murrell did not respond to this e-mail message, Brown and Talbot, Director of Global HRBP Services, "immediately after her complaint . . . canceled all upcoming meetings" with Plaintiff, including meetings regarding the

PIP. (*Id.* ¶¶ 53-54, 59.) Plaintiff sent a second e-mail message to Murrell informing her of the canceled and rescheduled meetings and asking for confirmation that the PIP had been put on hold. (*Id.* ¶¶ 55-56.) The situation "exacerbated" Plaintiff's "severe symptoms of anxiety" so, she took a leave of absence "to address . . . her disability." (*Id.* ¶ 57.)

On January 8, 2025, Plaintiff sent Murrell and Talbot an e-mail message thoroughly detailing her experience with Brown and alleging that Brown's conduct constituted discrimination and retaliation. (*Id.* ¶ 59.) Murrell responded on January 15, 2025, by simply stating that Plaintiff was expected to return to work on January 27, 2025, and that the "PIP could be addressed then." (*Id.* ¶¶ 59-60.) Plaintiff again emailed Murrell on January 23, 2025, requesting to discuss the PIP before returning to work, and expressing her discomfort with returning before discussing the issues regarding the PIP. (*Id.* ¶ 63.) Plaintiff then filed the original Complaint in the Superior Court of New Jersey, Law Division, on January 24, 2025, alleging that First Onsite, Brown, and Murrell subjected Plaintiff to "unlawful discrimination and retaliation on account of her disability under . . . NJLAD." (*Id.* ¶ 64; *see generally* Compl., ECF No. 1-1.)

In the aftermath of filing the Complaint, Murrell refused to discuss Plaintiff's grievances via e-mail explaining that "given that this matter is now the subject of active litigation, we believe it is inappropriate to address the historical context within this e[-]mail thread." (Am. Compl. ¶ 66.) Plaintiff's counsel was also informed by Futrovsky, Regional Corporate Counsel for First Onsite, that all communications regarding Plaintiff's employment should be communicated to him. (*Id.* ¶¶ 66, 69.) In response to another e-mail message sent by Plaintiff objecting to Murrell's previous statement that First Onsite could not discuss the issues because of the pending litigation, Murrell responded that "[w]e disagree with your assertion that you have been treated wrongfully in anyway [sic] or that you have expressed any concerns that were not addressed." (*Id.* ¶¶ 71-72.)

While Plaintiff was still on leave, her father was diagnosed with pancreatic cancer. (*Id.* ¶ 74.) Plaintiff disclosed her father's diagnosis to Murrell on March 13, 2025. (*Id.* ¶ 75.) Plaintiff was scheduled to return to work on March 24, 2025, but requested to return to work on March 26, 2025, instead to deal with her father's treatment. (*Id.* ¶¶ 75-76.) Murrell approved this request. (*Id.* ¶ 76.) Plaintiff returned to work on March 26, 2025. (*Id.*) After returning to work, on March 28, 2025, Plaintiff was called into a meeting and was terminated by Talbot and Futrovsky "for cause" for "violat[ing] a company policy[.]" (*Id.* ¶¶ 77-79.)

**B.    Procedural Background**

This action was first brought by Plaintiff on January 24, 2025, in the Superior Court of New Jersey, Law Division – Middlesex County, alleging two causes of action pursuant to the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"): (1) disparate treatment and discrimination due to disability ("Count One"); and (2) retaliation and improper reprisal ("Count Two"). (*See generally* Compl.) On February 24, 2025, the action was removed to this Court by Defendants pursuant to 28 U.S.C. § 1446(b). (Notice of Removal, ECF No. 1.) On May 1, 2025, Plaintiff filed the operative Amended Complaint, asserting the same claims, incorporating the events that occurred after January 24, 2025, and naming Futrovsky and Talbot as additional defendants. (*See generally* Am. Compl.) Defendants filed the instant Motion to Dismiss (Defs.' Mot. to Dismiss., ECF No. 12), Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 14) and Defendants replied (Defs.' Reply Br., ECF No. 18).

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[2] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

### III.    **DISCUSSION**

Defendants seek to dismiss Plaintiff's claims asserted against Murrell, Futrovsky, and Talbot arguing that: (1) Plaintiff fails to sufficiently allege that Murrell and Futrovsky were her supervisors; and (2) Plaintiff did not sufficiently allege that Murrell, Futrovsky, and Talbot's conduct constitutes "knowing and substantial assistance." (Defs.' Moving Br. 8-18, ECF No. 12-1.)

### A.    **Plaintiff has sufficiently alleged that Murrell, Futrovsky, and Talbot were supervisors pursuant to NJLAD**

Defendants argue that Plaintiff does not sufficiently allege that Murrell and Futrovsky were supervisors for the purpose of establishing liability under NJLAD.[3] (*Id.* at 8-11; Defs.' Reply Br. 3-5.)

"'[I]ndividual liability for a supervisor for acts of discrimination . . . [pursuant to NJLAD] can only arise through the "aiding and abetting" mechanism[.]'" *Clayton v. City of Atl. City*, 722 F. Supp. 2d 581, 591 (D.N.J. 2010) (quoting *Cicchetti v. Morris Cnty. Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008)). "Only supervisors may be held liable under an aiding and abetting standard as they have 'a duty to act against harassment.'" *Randall v. Rutgers, State Univ. of N.J.*, No. 13-7354, 2014 WL 6386814, at *5 (D.N.J. Nov. 14, 2014) (citations omitted); *see also Mahmoud v. Canon Sols. Am., Inc.*, No. 21-11935, 2021 WL 6197422, at *3 (D.N.J. Dec. 22, 2021) ("'[I]ndividual liability is confined to supervisory employees.'" (quoting *Ross v. Amazon.com, Inc.*, No. 19-1864, 2019 WL 1227112, at *2 (D.N.J. Mar. 14, 2019))). "A supervisory employee 'has the authority to hire, fire, discipline, control employees' wages or control employees' schedules.'" *Mahmoud*, 2021 WL 6197422, at *3 (quoting *Herman v. Coastal Corp.*, 791 A.2d

---

[3] Defendants do not dispute that Talbot was a supervisor for the purpose of establishing liability under NJLAD. (*See* Defs.' Moving Br. 8-11 (arguing that the Amended Complaint does not support Plaintiff's allegations that "Murrell and Futrovsky were her 'supervisors'"); *see also* Defs.' Reply Br. 3-6 (arguing that Plaintiff's Opposition Brief "does not . . . dispute that the [A]mended [C]omplaint fails to allege that Murrell and Futrovsky were Plaintiff's supervisors").)

238, 254 (N.J. Super. Ct. App. Div. 2002)). A defendant does not have to be a plaintiff's direct supervisor to face individual liability as an aider and abettor pursuant to NJLAD. *See Wark v. J5 Consulting, LLC*, No. 23-266, 2023 WL 6366731, at *6 (D.N.J. Sep. 29, 2023) ("*Cic[c]hetti* does not dictate that a defendant must be the plaintiff's direct supervisor to face individual liability as an aider and abettor." (quoting *Cicchetti*, 947 A.2d at 644)).

Here, Plaintiff adequately alleges that Murrell, Futrovsky, and Talbot were supervisory employees. Plaintiff specifically alleges that Murrell approved Plaintiff's request to return to work two days later than scheduled. (Am. Compl. ¶ 76.) Taking this allegation as true, as the Court must at this stage, Plaintiff adequately pleads that Murrell is a supervisory employee who has the ability to control plaintiff's schedule. *See Herman*, 791 A.2d at 254. Plaintiff, moreover, alleges that Futrovsky and Talbot "terminated Plaintiff's employment." (Am. Compl. ¶ 78.) Also taking this allegation as true, Plaintiff adequately pleads that Futrovsky and Talbot had the authority to fire Plaintiff and are therefore supervisory employees for the purposes of aiding and abetting liability pursuant to NJLAD. *See Herman*, 791 A.2d at 254.

## B.    Aiding and Abetting, Knowing and Substantial Assistance

Defendants argue that Plaintiff's allegations regarding Murrell, Talbot, and Futrovsky's conduct does not constitute knowing and substantial assistance pursuant to NJLAD. (Def.'s Moving Br. 11-18.)

Aiding and abetting liability under NJLAD takes two forms: the active form "which requires 'knowing and substantial assistance,' or [the] passive [form] which requires that a 'supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its existence.'" *Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ.*, No. 19-8450, 2020 WL 2847757, at *12 (D.N.J. June 1, 2020) (citations omitted). To state a claim of aiding and abetting

8

in discrimination under the active form, a plaintiff must allege that the individual defendant: (1) aided the party performing a wrongful act that causes injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided the assistance; and (3) knowingly and substantially assisted the principal violation. *Cicchetti*, 947 A.2d at 645.

To state a claim under the passive form, a plaintiff must adequately allege that the "supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its existence." *Lopez-Arenas v. Zisa*, No. 10-2668, 2012 WL 933251, at *10 (D.N.J. Mar. 19, 2012) (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999)). Such "'inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance or encouragement.'" *Hurley*, 174 F.3d at 126 (quoting *Failla v. City of Passaic*, 146 F.3d 149, 158 n.11 (3d Cir. 1998)).

At this stage, Plaintiff "need only allege sufficient facts giving rise to the inference that [Murrell, Futrovsky, and Talbot] unlawfully aided and abetted" First Onsite. *Wark*, 2023 WL 6366731, at *6. As to Murrell, Plaintiff has failed to do so. Although Plaintiff alleges that Murrell "intentionally refused to address Plaintiff's repeated complaints of discrimination and retaliation[,]" the only alleged actions Murrell took were to respond to Plaintiff's e-mail messages. (*See generally* Am. Compl.) Specifically, Plaintiff alleges that Murrell: (1) responded to Plaintiff's e-mail message and stated that discussion regarding the PIP would resume once Plaintiff returned to work; (2) informed Plaintiff that "it [was] inappropriate to address the historical context" of Plaintiff's allegations within an e-mail message thread given that the matter was subject to ongoing litigation; (3) stated in an e-mail message that Defendants disagreed with Plaintiff that she had been "treated wrongfully" or that her "concerns were not addressed"; and (4) approved Plaintiff's

request to return to work at a later than scheduled date. (Am. Compl. ¶¶ 61, 66, 72, 76.) These facts insufficiently allege that Murrell's "inaction [or action] 'rise[] to the level of providing substantial assistance or encouragement[.]'" (*See id.*); *see also Dickerson*, 2020 WL 2847757, at *12. The allegations do not include Murrell taking any adverse action against Plaintiff and do not give rise to an inference that Murrell aided or abetted any discriminatory conduct under either the active or passive form. *See, e.g.*, *Bourhill v. Nextel of N.Y., Inc.*, No. 10-5793, 2013 WL 1680140, at *10 (D.N.J. Apr. 17, 2013) (explaining that a defendant's "[f]ailure to respond to emails . . . d[id] not rise to the level of 'substantial assistance'"). Plaintiff, accordingly, fails to adequately plead that Murrell met the substantial assistance threshold for pleading purposes, and the Court grants Defendants' Motion to Dismiss as to the claims asserted against Murrell.

On the other hand, Plaintiff has adequately alleged that Talbot provided substantial assistance to First Onsite. The Amended Complaint alleges that Plaintiff included Talbot on at least one e-mail message describing the alleged discrimination and retaliation, that shortly after receiving these complaints Talbot canceled meetings with Plaintiff, and that within two days of Plaintiff's return from leave, Talbot terminated Plaintiff's employment. (Am. Compl. ¶¶ 52-55, 59, 77-80.) Such temporal proximity, notice of discrimination, and involvement in Plaintiff's termination are adequate to support an inference of "substantial assistance" at this stage. *See, e.g.*, *D.M. v. Walgreens Pharmacy, Inc.*, No. A-1106-07T2, 2008 WL 2917121, at *8 (N.J. Super. Ct. App. Div. July 31, 2008) (explaining that "'temporal proximity' . . . is a factor in establishing a prima facie case of retaliation under" NJLAD). Taken as true, the allegations that Talbot received complaints about discrimination and retaliation and then fired Plaintiff two days after she returned from leave are sufficient to plausibly state a claim of retaliation and Talbot's aiding and abetting liability pursuant to NJLAD. *See Yobe v. Renaissance Elec., Inc.*, No. 15-3121, 2016 WL 614425,

at *4 (D.N.J. Feb. 16, 2016) (finding that plaintiff sufficiently pleaded a retaliation claim pursuant to NJLAD by alleging that defendant terminated plaintiff's employment in response to disability leave); *see also Curro v. HD Supply, Inc.*, No. 19-19198, 2020 WL 3496955, at *10 (D.N.J. June 29, 2020) (finding that plaintiff sufficiently pleaded a retaliation claim pursuant to NJLAD when he alleged that defendants terminated his employment because of his disability and complaints about discrimination). The Court, accordingly, denies Defendants' Motion to Dismiss the claims asserted against Talbot.

Plaintiff has also adequately alleged a claim under NJLAD as to Futrovsky. Although Plaintiff does not allege that Futrovsky personally received Plaintiff's e-mail messages describing the discrimination, Plaintiff alleges that Futrovsky as Corporate Counsel, after Plaintiff filed suit, informed Plaintiff's counsel that "he would be the one to communicate 'regarding all things related to [Plaintiff's] employment.'" (Am. Compl. ¶¶ 66-69.) It follows that Futrovsky was aware that Plaintiff had filed a discrimination and retaliation lawsuit. (*Id.*) The Amended Complaint also alleges that Futrovsky and Talbot "terminated Plaintiff's employment." (*Id.* ¶ 78.) At the pleading stage, these facts give rise to the reasonable inference that Futrovsky knew the termination was connected to Defendants' discriminatory conduct and that Futrovsky knowingly assisted in effectuating the termination. (*See id.* ¶¶ 65-69, 78.) Because the Amended Complaint alleges that Futrovsky: (1) knew of the pending discrimination and retaliation allegations through the ongoing lawsuit; and (2) participated in the challenged termination, Plaintiff has plausibly alleged awareness of the wrongful conduct and "knowing and substantial assistance." (*See id.* ¶¶ 65-69, 78); *see also Yobe*, 2016 WL 614425, at *4 (finding that plaintiff sufficiently pleaded a retaliation claim pursuant to NJLAD by alleging that defendant terminated plaintiff's employment in response to disability leave); *Curro*, 2020 WL 3496955, at *10 (same); *see also Thomas v. U-Haul Co.*, No.

11

23-21469, 2024 WL 4501566, at *5 (D.N.J. Oct. 15, 2024) (noting that for pleading purposes "this Court construes NJLAD liberally").

The Court is therefore satisfied that Plaintiff has sufficiently alleged aiding and abetting liability pursuant to NJLAD against Futrovsky and Talbot.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted as to the claims asserted against Murrell and denied as to the claims asserted against Futrovsky and Talbot. The Court will issue an Order consistent with this Memorandum Opinion.

_____

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**DATED:**    12/12/25